IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ARNOLD ALCANTAR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 20-cv-00664-LKG |
| v. ) | |
| ) | Dated: July 24, 2025 |
| COSTCO WHOLESALE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION
ON THE DEFENDANT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS**

**I.     INTRODUCTION**

The remaining claim in this civil action is a negligence claim brought by the Plaintiff, Arnold Alcantar, against the Defendant, Costco Wholesale Corporation ("Costco"), arising from the Plaintiff's purchase of a grill (the "Grill") at a Cotsco warehouse store located in Fredrick, Maryland. ECF No. 21. The Court held a one-day bench trial on the Plaintiff's negligence claim on September 16, 2024. ECF No. 117. Following the trial, Costco filed a motion for judgment on partial findings, pursuant to Fed. R. Civ. P. 52(c), and a post-trial brief. ECF No. 125. The Plaintiff has also filed a response in opposition to Costco's motion and a post-trial brief. ECF No. 126. Costco's motion is fully briefed. ECF Nos. 125, 126 and 127. No hearing is necessary to resolve the motion. L.R. 105.6 (D. Md. 2023).

For the reasons set forth below, the Court: (1) **GRANTS** Costco's motion for judgment on partial findings (ECF No. 125); (2) **CONCLUDES** that the preponderance of the evidence establishes that: (a) Costco did not breach a duty of ordinary care, by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff and (b) the Plaintiff assumed the risk of being injured while lifting the Grill box during the Grill Lifting Incident; (3) **ENTERS JUDGMENT** on the partial findings in favor of Costco for these reasons, pursuant to Fed. R. Civ. P. 52(c); and (4) **DISMISSES** the complaint.

## II.  FINDINGS OF FACT

### A.  Factual Background

<u>Case Overview</u>

This civil dispute involves a negligence claim brought by the Plaintiff against Costco, arising from the Plaintiff's purchase of the Grill at a Cotsco warehouse store located in Fredrick, Maryland in 2018.  *See generally* ECF No. 21.  Specifically, the Plaintiff alleges that a Costco employee acted negligently and breached a duty of ordinary care, by failing to lift the Grill box into the Plaintiff's vehicle at the same time as the Plaintiff on an agreed upon count.  *Id.* at ¶¶ 23 and 42.  The Plaintiff contends that he suffered injuries as a result of the alleged breach of a duty of ordinary care.  *Id.* at ¶¶ 43-47.  And so, the Plaintiff seeks to recover, among other things, monetary damages in the amount of $51,262.10 for medical bills and $30,474.00 for lost wages from Costco.  *Id.* at Prayer for Relief; *see also* ECF No. 126 at 30.

Costco denies that it is liable to the Plaintiff.  *See generally* ECF No. 23.  In this regard, Costco maintains that: (1) it owed no duty to the Plaintiff for its employee to lift the Grill box at the same time as the Plaintiff; (2) its employee did not breach any such duty; (3) the Plaintiff voluntarily and knowingly assumed the risk of this incident and his injuries; (4) the Plaintiff was contributorily negligent, which was the proximate cause of the incident and any injuries that occurred; and (5) the Plaintiff failed to mitigate his damages and losses.  ECF No. 23 at ¶¶ 57-60.  And so, Costco requests that the Court enter judgment on the partial findings in its favor, or, alternatively, enter judgment in favor of Costco based upon all evidence presented at trial.  ECF No. 125 at 19-20.

The Court held a bench trial in this matter on September 16, 2024.  ECF No. 117.  During the trial, the Plaintiff presented the following fact witnesses: Arnold V. Alcantar and Patricia Anne Alcantar.  ECF No. 122 at 20-155.  During the trial, Costco presented the following fact witnesses: Arnold V. Alcantar (video deposition) and David Douglasson, the general manager of the Costco warehouse store.  *Id.* at 177-198.

The Parties also introduced the following joint trial exhibits: (1) Reston Hospital Center Bills and Reports; (2) Reston Anesthesia Associates Bills; (3) Cardiovascular Specialists of Frederick, LLC Bills and Reports; (4) Amber Hill Physical Therapy Bills and Reports; (5) Arthritis & Sports Orthopedics Bills and Reports; (6) Radiology Imaging Associates (MRI) Bills and Reports; (7) Community Radiology Associates (MRI) Bills and Reports; (8) Client Out-of-Pocket

Expenses -Amber Hill PT; (9) Express Urgent Care Bill and Report; (10) Plaintiff's Lost Wages; (11) Specifications of Traeger Select Pellet Grill; (12) Photo of Traeger Select Pellet Grill; (13) Costco Member First Report of Incident; (14) Receipt of Purchase on April 29, 2018; (15) Douglas M. Shepard, MD's Report; (16) Douglas M. Shepard, MD's Addendum; and (17) Douglas M. Shepard, MD's CV.  ECF No. 118.

The Court's Factual Findings

Based upon the evidence presented at trial, the Court makes the following findings of fact:

On April 29, 2025, at around 4:00 p.m., the Plaintiff and his wife, Patricia Anne Alcantar, went to a Costco warehouse store located in Fredrick, Maryland to conduct their weekly grocery shopping.  ECF No. 122 at 22:7-23 and 25:1-5.  During this particular visit to Costco, Mrs. Alcantar used a motorized scooter for ambulation purposes, because she had recently undergone an MCL repair of her right knee.  *Id.* at 26:3-17 and 118:10-19.

The Grill

While shopping at the Costco warehouse store, the Plaintiff spotted a gentleman selling Traegar brand grills.  *Id.* at 26:20-27:3.  Because the Plaintiff had a personal interest in grilling and smoking, he stopped to talk with the salesman about the Grill.  *Id.* at 26:20-28:15.  The Plaintiff initially decided not to buy the Grill and he walked away from the salesman to continue shopping.  *Id.* at 28:16-23.  But, the Plaintiff later came back to the salesman and began discussing the details about purchasing the Grill.  *Id.* at 29:5-21.

During the trial, the Plaintiff testified that he told the salesman that he was concerned he would be unable to load the Grill box into his vehicle, because Mrs. Alcantar could not assist him and he had no one else to help him load the Grill.  *Id.* at 30:11-12.  The Plaintiff also testified that he was not familiar with how heavy the box containing the Grill was, but he observed that the box appeared "big" and "heavy," and he did not know whether Costco offered assistance with loading the Grill box into his vehicle.  *Id.* at 30:11-15, 31:23-32:7 and 96:12-23.

In addition, the Plaintiff testified that the Costco salesman assured him that Costco would take care of loading the Grill.  *Id.* at 32:11-18.  And so, the Plaintiff testified that the salesman "assured [him] 100 percent that Costco was going to load this grill for me," and he decided to purchase the Grill.  *Id.* at 32:22-33:3.

Thereafter, the Costco salesman slid the Grill box onto a flatbed.  *Id.* at 33:4-34:5.  The Plaintiff testified that he did not assist the salesman in sliding the Grill box onto the flatbed, but he

3

observed that the salesman used "a lot of effort" to move the Grill box and that the box "has some weight to it." *Id.* at 33:5-34:18.

Mrs. Alcantar testified that she spoke to the store's manager, "Larquil," and asked whether Costco would assist with loading the Grill box into the Plaintiff's vehicle. *Id.* at 123:15-25. The Plaintiff also testified that the store manager assured the Alcantars that assistance would be provided and that at least two Costco employees would be sent to help load the Grill. *Id*. at 35:8-36:2; *see also id.* at 123:22-124:2.

The Plaintiff then purchased the Grill and he brought the flatbed containing the Grill box to the front of the store to wait for assistance. *Id.* at 36:1-7. The Plaintiff then proceeded to retrieve his vehicle to prepare loading the Grill, while Mrs. Alcantar remained with the Grill. *Id.* at 36:3-11 and 124:11-18. But the Alcantars testified that no assistance was provided by Costco. *Id.* at 37:14-24 and 124:25-125:7. Given this, the Plaintiff testified that he became frustrated and considered returning the Grill. *Id.* at 37:15-24.

Mrs. Alcantar testified that she then returned to the Costco warehouse store and again spoke to manager "Larquil" to ask for assistance. *Id*. at 125:9-16. Mrs. Alcantar also testified that the manager told her that he would be sending someone to assist and he told Mrs. Alcantar to look for a gentleman to appear by the carts in a yellow vest. *Id.* In this regard, Mrs. Alcantar testified that, when she saw the Costco employee in a yellow vest, she asked whether anyone else would be sent to assist, and the employee responded that another employee was "coming." *Id.* at 125:20-126:1.

### The Grill Loading Incident

The Costco employee in the yellow vest then proceeded towards the Plaintiff's vehicle.[1] *Id.* at 126:2-4. The Plaintiff and Mrs. Alcantar both testified that they recognized the individual in the yellow vest as one of Costco's employees. *Id*. at 39:25-40:22 and 126:5-16. But the Plaintiff testified that he had concerns about having only one Costco employee to help him load the Grill

---

[1] The parties stipulated at trial that: (1) Costco would not argue that the individual at the box at the time of the attempted lift was not an employee and (2) this individual was working within the scope of his employment. ECF No. 121 at 1; ECF No. 122 at 189:13-19. Mrs. Alcantar also identified, *via* a photograph, the Costco employee that she believed assisted the Plaintiff in loading the Grill. ECF No. 122 at 134:17-135:2. But the warehouse manager disagreed, because he believed it was another employee. *Id.* at 135:3-9.

4

box into his vehicle and that he understood that more than one Costco employee would be sent to assist him. *Id.* at 41:7-12.

The Plaintiff also testified that the Costco employee repeatedly told him: "We can, we got this, we can get this, we got this . . . ." *Id*. at 41:13-24; *see also id.* at 127:15-23. Mrs. Alcantar further testified that the Costco employee indicated that he had performed similar lifts before with one other person and that the employee described to the Plaintiff how he had done it successfully in the past. *Id.* at 127:20-25. And so, the Plaintiff maintains that the Costco employee again gave him repeated reassurances, thereby inducing him to participate in lifting the Grill. *Id.* at 41:7-24.

In addition, the Plaintiff testified that, as he and the Costco employee prepared to lift the Grill box into the vehicle, he, again, expressed doubts that they could lift the Grill box. *Id.* at 41:15-24. In this regard, the Plaintiff testified that he observed that there were no handles or shipping straps on the box for the Grill, meaning they would have to lift the Grill from the bottom of the box. *Id.* at 42:4-12 and 49:6-11. Given this, the Plaintiff came up with the idea to lift the Grill box on a countdown, because otherwise "somebody could get hurt." *Id.* at 48:12-19. In this regard, the Plaintiff testified that the Costco employee heard and acknowledged his instructions regarding the countdown. *Id*. at 41:7-24, 43:25-44:7, 48:20-25 and 80:3-24. And so, the Plaintiff testified that he and the Costco employee agreed to lift the Grill box after a count of three. *Id.* at 42:1-12, 44:1-7 and 48:20-25.

The Plaintiff testified that he and the Costco employee then bent down to lift the Grill box, which partially blocked the Plaintiff from seeing the employee. *Id.* at 50:8-20. The Plaintiff also testified that he counted to three and then lifted his end of the Grill box. *Id.* at 50:20-51:3. Shortly thereafter, the Plaintiff heard a loud "pop," and pain shot throughout his left arm. *Id.* Nonetheless, the Plaintiff managed to lift his edge of the box onto the tailgate of his car using his right knee and right shoulder, while the Costco employee lifted his edge of the Grill box onto the tailgate of the vehicle. *Id.* at 51:20-52:9. Ultimately the Plaintiff and the Costco employee successfully pushed the Grill box into the Plaintiff's vehicle, so the tailgate could be closed. *Id.* at 51:18-19 and 53:8-25.

The Plaintiff maintains that the Costco employee did not lift the Grill box when the countdown concluded and the time to lift commenced. *Id*. at 52:6-9 and 101:21-23. And so, the Plaintiff also maintains that the weight of the Grill box shifted to him unexpectedly, causing him to bear much of the weight of the Grill box. *Id*. at 42:3-22. In this regard, the Plaintiff testified that

5

he confronted the Costco employee about failing to lift the Grill box at the agreed upon time and that the Costco employee initially provided no response. *Id*. at 43:3-5 and 52:17-21. The Plaintiff also testified that the Costco employee subsequently indicated that he did what he could, or did what he did, and then left the scene. *Id.* at 54:13-14; *see also id.* at 130:22-131:3. Lastly, David Douglasson, a general manager at Costco, testified during the trial that there was no video showing the outside of the warehouse or the Grill Loading Incident. *Id.* at 196:21-23.

The Plaintiff's Injuries

After the Grill box was loaded into the Plaintiff's vehicle, the Alcantars went shopping at Lowes. *Id.* at 56:19-57:2. The Plaintiff testified that, when he attempted to pick up a pipe at Lowes, he fully realized the extent of the injury that he sustained to his left arm while loading the Grill. *Id.* at 57:12-21. And so, the Plaintiff went to an urgent care around 6:00 or 6:30 p.m. that same day, where he was given a sling and prescribed pain medication. *Id.* at 60:16-61:18 and 131:13-24.

The next day, the Plaintiff was seen by his doctor, Dr. Goodwin. *Id.* at 61:22-62:4; *see* ECF No. 118 (Jt. Ex. 9). During this visit, Dr. Goodwin ordered an MRI for the Plaintiff's arm. ECF No. 122 at 62:7-14. After the Plaintiff underwent the MRI, Dr. Goodwin informed the Plaintiff that he had suffered a torn bicep, which required surgery and subsequent physical therapy for rehabilitation. *Id.* at 64:19-65:6; *see* ECF No. 118 (Jt. Exs. 1-8).

On May 2, 2018, Mrs. Alcantar returned the Grill to Costco. ECF No. 122 at 131:24-132:12.

The Plaintiff contends that he missed approximately three months of work as an assistant chief for the United States Border Patrol, due to the injury to his left arm. *Id.* at 72:6-12. The Plaintiff also contends that his recovery from surgery affected his daily life, including his sleep, eating and grooming habits, and ability to participate in his hobbies. *Id.* at 73:2-75:20. And so, the Plaintiff further contends that he continues to live with pain, numbness and, at times, a ripping sensation in his left arm. *Id.* at 77:10-78:9.

**B. Relevant Procedural History**

The Court held a one-day bench trial in this matter on September 16, 2024. ECF No. 117. On October 29, 2025, Costco filed a motion for judgment on partial findings, pursuant to Fed. R. Civ. P. 52 (c), and a post-trial brief. ECF No. 125.

On November 18, 2024, the Plaintiff filed a response in opposition to Costco's motion and a post-trial brief. ECF No. 126. On December 2, 2024, Costco filed a reply in support of its motion. ECF No. 127.

Costco's motion for judgment on partial findings having been fully briefed, the Court resolves the pending motion.

### III.   STANDARDS OF DECISION

#### A. Fed. R. Civ. P. 52

Rule 52(c) of the Federal Rules of Civil Procedure provides that: "If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). When entering a "judgment on partial findings," the Court must separately state the supporting "findings of fact and conclusions of law." Fed. R. Civ. P. 52(a) and (c).

"In considering whether to grant judgment under Rule 52(c) the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of the trial." *Vincent v. United States*, No. 22-3019, 2024 WL 5202240, at *1-2 (D. Md. Dec. 23, 2024) (quoting *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 272 (3rd Cir. 2010)). In doing so, the Court weighs and considers all of the evidence presented at trial. *Cherrey v. Thompson Steel Co.*, 805 F. Supp. 1257, 1261 (D. Md. 1992). The Court may also sustain a motion for judgment on partial findings, where a plaintiff presents a *prima facie* case. *Holmes v. Bevilacqua*, 794 F.2d. 142, 147 (4th Cir. 1986). And so, the Court "does not view the evidence through a particular lens or draw inferences favorable to either party." *Vincent*, 2024 WL 5202240, at *1-2 (citation omitted).

#### B. Negligence

Under Maryland law, a plaintiff asserting a negligence claim must demonstrate four elements: (i) a duty owed, (ii) a breach of that duty, (iii) causation and (iv) damages. *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004). A Plaintiff must establish each element of a negligence claim by a preponderance of the evidence. *Miller v. United States*, 308 F. Supp. 2d 604, 607 (D. Md. 2004). Relevant to this dispute, Maryland courts have recognized that shopkeepers owe their invitees a "duty of ordinary care to maintain their premises in a reasonably safe condition." *Giant Food v. Mitchell*, 640 A.2d 1134, 1135 (1994). This duty applies "not only against dangers which may arise from some defect or unsafe condition of the

7

physical property . . . but against dangers which may be caused by the negligent acts of his employees, or even of customers, where, as a reasonably prudent person, he should have anticipated the possible occurrence and the probable results of such acts." *Id.* (quoting *Eyerly v. Baker*, 178 A. 691, 694 (Md. 1935)).  And so, this duty is breached when a shopkeeper acts without the "caution, attention, or skill a reasonable person would use under similar circumstances." *Walker v. Nat'l R.R. Passenger Corp.*, 703 F. Supp. 2d 495, 502 (D. Md. 2010).

### C. The Assumption Of Risk

The assumption of risk defense "rests upon an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct toward him and to take his chances from harm from a particular risk." *Crews v. Hollenbach*, 751 A.2d 481, 488 (Md. 2000) (quoting *Rogers v. Frush*, 262 A.2d 549, 554 (Md. 1970)).  And so, "by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superseded by the plaintiff's willingness to take a chance." *Prudential Secs. v. E-Net, Inc.*, 780 A.2d 359, 377 (Md. Ct. Spec. App. 2011) (quoting *Schroyer v. McNeal*, 592 A.2d 1119, 1123 (Md. 1991)).

The assumption of risk defense functions as a complete bar to recovery under a negligence theory, because it is a previous abandonment of the right to complain if an accident occurs. *Id.* (citing *Crews*, 751 A.2d at 488).  To establish the defense of assumption of risk under Maryland law, "the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship v. Martin*, 702 A.2d 730, 734 (Md. 1997) (citations omitted).  In determining whether a plaintiff had knowledge of the risk of danger, the standard to be applied is a subjective one, "of what the particular plaintiff in fact sees, knows, understands and appreciates" in a given situation. *Poole v. Coakley & Williams Constr., Inc.*, 31 A.3d 212, 225 (Md. 2011) (citation omitted).  Maryland courts also require "some manifestation of consent to relieve the defendant of the obligation of reasonable conduct." *ADM P'ship*, 702 A.2d at 734.  And so, "[t]he risk will not be taken to be assumed if it appears from [the plaintiff's] words, or from the facts of the situation, that he does not in fact consent to relieve the defendant of the obligation to protect him." *Id.* (alteration in original) (citation omitted).

In addition, Maryland law allows the Court to impute knowledge to a plaintiff, as a matter of law, "where there is undisputed evidence of awareness, e.g., physical interaction with or sensory

8

perception of a dangerous condition." *Poole*, 31 A.3d at 231-32. Maryland courts have also recognized that there are certain risks for which anyone of adult age must be taken to appreciate, such as the danger of slipping on ice, of falling through unguarded openings and of lifting heavy objects. *ADM P'ship*, 702 A.2d at 734 (citation omitted).

### D. Equitable Estoppel

Lastly, the doctrine of equitable estoppel "applies at both law and equity to preclude a party from asserting rights against another 'who has in good faith relied upon such conduct and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'" *Steele v. Diamond Farm Homes Corp.*, 211 A.3d 411, 421 (Md. 2019). Maryland courts have also held that equitable estoppel is "cognizable at common law either as a defense to a cause of action, or to avoid a defense." *Lipitz v. Hurwitz*, 77 A.3d 1088, 1099 (Md. 2013) (quoting *Leonard v. Sav-A-Stop Servs., Inc.*, 424 A.2d 336, 339 (Md. 1981)). In this regard, there are three elements to a claim for equitable estoppel: "1) a voluntary representation of one party, 2) that is relied on by the other party, 3) to the other party's detriment." *Reichs Ford Rd. Joint Venture v. State Roads Comm'n of the State Highway Admin.*, 880 A.2d 307, 321 (Md. 2005). Maryland courts have also held that the intention to mislead is not required, so long as "the actions of one party cause a prejudicial change in the actions of another." *Creveling v. Gov't Emps. Ins. Co.*, 828 A.2d 229, 247 (Md. 2003). And so, whether the party has shown that an estoppel exists "is a question of fact to be determined in each case." *Id.* (quoting *Markov v. Markov*, 758 A.2d 75, 81 (Md. 2000))

### III. CONCLUSIONS OF LAW

Costco has moved for judgment on the partial findings, pursuant to Fed. R. Civ. P. 52(c), upon the following grounds: (1) the Plaintiff failed to establish that Costco breached a duty owed to him; (2) the Plaintiff failed to establish causation; (3) the Plaintiff's assumption of risk precludes his recovery; and (4) the Plaintiff's contributory negligence precludes his recovery. ECF No. 125 at 8-19. And so, Costco requests that the Court enter judgment on the partial findings in its favor, or, alternatively, enter judgment in favor of Costco based upon all evidence presented at trial. *Id.* at 19.

The Plaintiff counters that the Court should deny Costco's motion and enter judgment in his favor, because: (1) Costco breached its duty of ordinary care to the Plaintiff, when its employee failed to lift the Grill box at the same time as the Plaintiff during the Grill Loading Incident; (2) the

Costco employee's failure to lift the Grill box at the same time as the Plaintiff was the proximate cause of the Plaintiff's injuries; (3) the assumption of risk defense does not preclude the Plaintiff's recovery; (4) the contributory negligence defense also does not preclude the Plaintiff's recovery; (5) Costco's affirmative defenses are precluded by the doctrine of equitable estoppel; and (6) the Plaintiff is entitled to recover on his damages claim. ECF No. 126 at 6-30. And so, the Plaintiff requests that the Court deny Costco's motion, enter judgment in his favor and order Costco to pay monetary damages in the amount of $51,262.10 for his medical bills and $30,474.00 for his lost wages. *Id.* at 30.

For the reasons that follow, the preponderance of the evidence in this case does not establish that Costco breached a duty of ordinary care owed to the Plaintiff, by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff during the Grill Loading Incident. The preponderance of the evidence before the Court also shows that the Plaintiff assumed the risk of his injuries, by agreeing to assist the Costco employee in loading the Grill box into his vehicle during the Grill Loading Incident. And so, the Court: (1) GRANTS Costco's motion for judgment on partial findings (ECF No. 125); (2) CONCLUDES that the preponderance of the evidence establishes that: (a) Costco did not breach a duty of ordinary care, by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff and (b) the Plaintiff assumed the risk of being injured while lifting the Grill box during the Grill Lifting Incident; (3) ENTERS JUDGMENT on the partial findings in favor of Costco for these reasons, pursuant to Fed. R. Civ. P. 52(c); and (4) DISMISSES the complaint.

### A. The Evidence Does Not Establish That Costco Breached A Duty Of Ordinary Care

As an initial matter, the Plaintiff has not established by a preponderance of the evidence that Costco breached a duty of ordinary care by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff during the Grill Loading Incident. It is well-established under Maryland law that the Plaintiff must establish four elements, by a preponderance of the evidence, to prevail on his negligence claim against Costco: (i) a duty owed, (ii) a breach of that duty, (iii) causation and (iv) damages. *Horridge*, 854 A.2d at 1238; *see also Miller*, 308 F. Supp. 2d at 607 (A Plaintiff must establish each element of his negligence claim by a preponderance of the evidence.). Relevant to this dispute, Maryland courts have recognized that shopkeepers owe their invitees a "duty of ordinary care to maintain their premises in a reasonably safe condition." *Giant Food*, 640 A.2d at 1135. And so, this duty is breached when a shopkeeper acts without the

"caution, attention, or skill a reasonable person would use under similar circumstances." *Walker*, 703 F. Supp. 2d at 502.

In this case, the preponderance of the evidence does not show that Costco breached a duty to ensure that its employee lifted the Grill box at the same time as the Plaintiff during the Grill Loading Incident for several reasons.

The Court first observes that the testimony of the Plaintiff during the trial establishes that the Plaintiff believed that the Costco employee agreed to lift the Grill box at the same time as him and that the Plaintiff believed that the Costco employee failed to do so. During the trial, the Plaintiff testified that a Costco employee in a yellow vest proceeded towards his vehicle to help load the Grill box. ECF No. 122 at 40:15-41:12. The Plaintiff also testified that, as he and the Costco employee prepared to lift the Grill box into the vehicle, he expressed doubts that they could successfully lift the Grill box. *Id.* at 41:15-24. Given this, the Plaintiff testified that he came up with the idea to lift the box for the Grill on a countdown, because otherwise "somebody could get hurt." *Id.* at 48:12-19. And so, the evidence before the Court shows that the Plaintiff believed that the Costco employee heard and acknowledged his instructions regarding the countdown and that he and the Costco employee agreed to lift the Grill box after a count of three. *Id*. at 41:7-24, 42:1-12, 43:25-44:7, 48:20-25 and 80:3-24.

But the evidentiary record is not clear or complete with regards to whether the Costco employee actually agreed to lift the Grill box at the same time as the Plaintiff, but failed to do so. During the trial, the Plaintiff testified that he believed the Costco employee understood and agreed to his plan to lift the Grill box at the conclusion of the countdown. *Id.* at 44:1-7. The Plaintiff also testified that, after the Grill box was loaded into his vehicle, he confronted the Costco employee about failing to lift the Grill box at the agreed upon time and that the Costco employee initially provided no response. *Id*. at 43:3-5 and 52:17-21. The Plaintiff also testified that the Costco employee ultimately indicated that he did what he could, or did what he did, and then left the scene. *Id*. at 54:13-14; *see also id.* at 130:22-131:3. Accepting the Plaintiff's testimony as credible and true, this evidence does not establish by a preponderance of the evidence that the Costco employee actually agreed to lift the Grill box at the same time as the Plaintiff.

Even if the Court accepts that the Costco employee agreed to lift the Grill box at the same time as the Plaintiff, there is very little evidence before the Court to show that the Costco employee failed to do so. During the trial, the Plaintiff testified that the Costco employee did not

11

lift the Grill box when the countdown concluded, and the time to lift the Grill commenced, because the weight of the Grill box shifted to him unexpectedly, causing him to bear much of the weight of the Grill box. *Id*. at 42:3-22, 52:6-9 and 101:21-23. But, the Plaintiff and Mrs. Alcantar also acknowledged during their respective testimony that the Grill box did not fall to the ground or back onto the flatbed, and that the Plaintiff and the Costco employee were able to successfully load the Grill box into the Plaintiff's vehicle. *Id.* at 51:20-52:9, 103:18-25, 129:19-20 and 146:16-17. While the Court finds the Plaintiff's testimony about the Grill Loading Incident to be credible, and affords this testimony significant weight, this evidence, alone, simply does not establish by a preponderance of the evidence that the Costco employee failed to lift the Grill box at the same as the Plaintiff.

      Notably, there are gaps in the evidence that prevent the Court from reaching this conclusion. For example, the Plaintiff's testimony about the Grill Loading Incident is not corroborated by other evidence in this case. In fact, the Costco general manager, David Douglasson, testified that there is no video of the Grill Loading Incident that could corroborate and/or shed light on what occurred during the Grill Loading Incident. *Id.* at 196:21-23. There is also no evidence before the Court to show the Costco employee's perspective of the Grill Loading Incident.

      More importantly, there is other evidence before the Court, including the Plaintiff's own testimony, that calls into question the Plaintiff's theory that the Costco employee failed to lift the Grill box at the same time as he did. As discussed above, the Plaintiff acknowledged during his testimony that the Costco employee's side of the Grill box did not fall to the ground, or back on the flatbed during the Grill Loading Incident, which suggests that the Costco employee was in fact lifting his side of the Grill box at the conclusion of the countdown. *See id.* at 103:18-25. The Plaintiff also acknowledged during his testimony that he had limited perspective of what the Costco employee did while lifting the Grill box, because the Plaintiff could not clearly see the Costco employee when he bent down to lift the Grill box. *See id.* at 50:8-20. As discussed above, there is no dispute in this case that the Costco employee and the Plaintiff were ultimately successful in lifting the Grill box onto the tailgate of the Plaintiff's car in a relatively short period of time. *Id.* at 51:20-52:9, 103:18-25, 129:19-20 and 146:16-17.

Given this evidence, the Court is not satisfied that Plaintiff has established by a preponderance of the evidence that Costco's employee agreed to, and failed to, lift the Grill box at the end of the countdown, as the Plaintiff contends in this case.

Because the Court concludes that the Plaintiff has not established by a preponderance of the evidence that the Costco employee failed to lift the Grill box at the same time as the Plaintiff, he has not shown that Costco breached a duty of ordinary care owed to him for this reason, which is a necessary element of his negligence claim. *Miller*, 308 F. Supp. 2d at 607 (requiring a plaintiff to establish each element of negligence by a preponderance of the evidence). And so, the Court GRANTS Costco's motion for judgment on the partial findings on the Plaintiff's negligence claim. Fed. R. Civ. P. 52(c).[2]

**B. The Evidence Shows That The Plaintiff Assumed The Risk Of His Injuries**

Even if the Plaintiff could establish that Costco beached a duty of ordinary care, and the other elements of his negligence claim in this civil action, Costco has also met its burden to show that the Plaintiff assumed the risk of his injuries, thereby barring recovery under the Plaintiff's negligence claim. To establish the defense of assumption of risk under Maryland law, Costco must show that the Plaintiff: "(1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship*, 702 A.2d at 734 (citations omitted). If Costco can make this showing, the assumption of the risk defense functions as a complete bar to the Plaintiff's recovery under a negligence theory. *Prudential Secs.*, 780 A.2d at 377 (citing *Crews*, 751 A.2d at 488).

In this case, the evidence before the Court shows that the Plaintiff assumed the risk of his injuries in connection with the Grill Loading Incident for four reasons.

First, the evidence before the Court shows that the Plaintiff had knowledge of the risk of the danger of being injured by lifting the Grill box into his vehicle. During the trial, the Plaintiff testified that he was aware that the Grill box was heavy and that he would require assistance to load the Grill box into his vehicle, when he purchased the Grill. ECF No. 122 at 31:23-32:3 and 34:13-18. Notably, the Plaintiff testified that he is familiar with the size and weight of similar grills, because he owns several other grills that weighed more than 100 pounds. *Id.* at 95:5-96:19.

---

[2] Because the Plaintiff has not established a breach of a duty of ordinary care, the Court does not address the remaining elements of his negligence claim.

The Plaintiff also testified that he was concerned when considering whether to buy the Grill because it "looked big and heavy." *Id.* at 96:12-19.

In addition, the Plaintiff testified that he observed that the salesman used "a lot of effort" to move the Grill box onto a flatbed, before he purchased the Grill, and that he also observed that the Grill box "has some weight to it." *Id.* at 33:5-34:18. The Plaintiff also acknowledged during his testimony that he understood that the Grill box did not have handles or straps and that he would have to lift the box from the bottom to load it into his vehicle. *Id.* at 42:4-8. And so, the Plaintiff's testimony makes clear that he was aware of, and concerned about, the weight of the Grill and his ability to load the Grill box into his vehicle, thereby satisfying the first element of an assumption of risk defense. *Id.* at 95:5-96:19.

The evidence also makes clear that the second element of an assumption of the risk defense—that the Plaintiff appreciated that risk of lifting the Grill box with just one Costco employee—is satisfied in this case. During the trial, the Plaintiff testified that he remained concerned about loading the Grill box into his vehicle, when only one Costco employee arrived to help him load the Grill, and that he believed that more than one Costco employee would be sent to assist him. *Id.* at 41:7-12. The Plaintiff also testified that, as he and the Costco employee prepared to lift the Grill box into the Plaintiff's vehicle, he, again, expressed doubts that they would be able to lift it. *Id.* at 41:15-24.

Notably, the evidence shows that the Plaintiff proposed a countdown, because he believed that it was necessary for him and the Costco employee to lift the Grill box at the same time to avoid injury. *Id.* at 48:12-19. Given this, the preponderance of the evidence before the Court also shows that the Plaintiff appreciated the risk of bodily danger posed by lifting the Grill box with the assistance of one Costco employee.

The evidence similarly shows that the Plaintiff voluntarily confronted the risk of danger, by deciding to lift the Grill box with the assistance of one Costco employee. The Plaintiff testified that, although he remained concerned that additional assistance would be needed to load the Grill box into his vehicle, he was "getting upset" and "getting impatient" after waiting for that assistance and that he agreed to load the Grill box with the one Costco employee. *Id.* at 98:13-99:15. In this regard, the Plaintiff testified that he agreed to lift the Grill box under these circumstances, despite appreciating that "someone could get hurt" if something went wrong with

the lift. *Id.* at 99:8-25. The Plaintiff also testified that he continued to lift the Grill box, after hearing a "pop" and feeling the pain in his left arm. *Id.* at 50:20-51:3 and 51:20-52:9.

Given this, the preponderance of the evidence shows that that the Plaintiff voluntarily confronted the risk of lifting the Grill box with the assistance of one Costco employee. And so, Costco has established the necessary elements of its assumption of risk defense in this case. *See ADM P'ship*, 702 A.2d at 734.

Lastly, the Plaintiff's argument that Costco should be equitably estopped from asserting the assumption of risk defense in this case is unconvincing. To apply equitable estoppel to this defense in this case, the Plaintiff must show: "1) a voluntary representation of one party, 2) that is relied on by the other party, 3) to the other party's detriment." *Reichs Ford Rd. Joint Venture*, 880 A.2d at 321. The Plaintiff has not met this burden here.

The Plaintiff argues that Costco should be equitably estopped from asserting the assumption of risk defense in this case, because he relied upon certain statements made by Costco employees to his detriment, when he agreed to purchase the Grill and later lift the Grill box into his vehicle. ECF No. 126 at 21-24. Specifically, the Plaintiff argues that he relied upon the following statements made by the Costco salesman and Costco's manager:

- The Plaintiff testified that, before purchasing the Grill, he told the salesman that he was concerned that he would be unable to load the Grill into his vehicle and that the Costco salesman "assured [him] 100 percent that Costco was going to load this grill for me." ECF No. 122 at 30:11-12; 32:22-33:3.

- Mrs. Alcantar also testified that, before the Plaintiff purchased the Grill, she spoke to the store's manager and asked whether Costco would assist with loading the Grill into the Plaintiff's vehicle, and the Plaintiff testified that the manager assured the Alcantars that assistance would be provided and that at least two employees would be sent to help load the Grill. *Id.* at 35:8-36:2 and 123:15-124:2.

But to the extent the Plaintiff relied upon these statements, the evidence makes clear that these statements only influenced the Plaintiff's decision to purchase the Grill. *Id.* at 35:8-36:2, 123:22-124:2 and 125:9-126:1 (showing that the Plaintiff decided to make the purchase after Mrs. Alcantar received assurances from Costco's manager that they would receive assistance with loading the Grill into the car). And so, they do not support the Plaintiff's equitable estoppel claim.

While a somewhat closer question, the remaining statements that the Plaintiff points to also fail to show that he relied upon these statements to his detriment in deciding to load the Grill box

15

into his vehicle with the assistance of one Costco employee.  In this regard, the Plaintiff argues that he relied upon the following statements from the Costco employee in the yellow vest:

- The Plaintiff testified that the Costco employee repeatedly told him: "We can, we got this, we can get this, we got this . . . ." *Id*. at 41:13-24.

- Mrs. Alcantar further testified that the Costco employee indicated that he had performed similar lifts before with one other person and he described to the Plaintiff how he had done it successfully in the past. *Id.* at 127:20-25.

- The Plaintiff also testified that the Costco employee gave him repeated reassurances, thereby inducing him to participate in lifting the Grill. *Id.* at 41:7-24.

But, again, the evidence does not show that the Plaintiff relied upon these statements in ultimately deciding to lift the Grill box into his vehicle with the assistance of one Costco employee.  Rather, the evidence shows the Plaintiff remained concerned about being able to lift the Grill box with one Costco employee after these statements were made.  *See id.* at 41:15-24.  In fact, the Plaintiff testified that he added an additional requirement of a countdown before he agreed to lift the Grill box.  *See id.*

Given this, the preponderance of the evidence shows that the Plaintiff made his own informed assessment of the risk of lifting the Grill box, while aided by one Costco employee, and that he ultimately decided to assume this risk after proposing the countdown.  *See id.*  And so, the evidence before the Court shows that the Plaintiff did not rely upon the statements of the Costco manager and/ or the Costco employees in making the decision to load the Grill box into his vehicle.

Because the Plaintiff has not shown that he relied upon the statements of the Costco manager and/ or Costco employees in deciding to lift the Grill box into his vehicle, he has also not shown that Costco is equitably estopped from arguing that he assumed the risk of his injuries related to the Grill Loading Incident.  *See Creveling*, 828 A.2d at 247 ("Whether the party has shown that an estoppel exists 'is a question of fact to be determined in each case.'" (citation omitted)).  And so, the Court concludes that Costco has met its burden to establish that the assumption of risk defense serves as an absolute bar to the Plaintiff recovering on his negligence

claim. For this separate reason, the Court also GRANTS Costco's motion. *See Prudential Secs.*, 780 A.2d at 377.[3]

## IV. CONCLUSION

In sum, the Plaintiff has not shown by a preponderance of the evidence that Costco breached a duty of ordinary care, by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff. Costco has also shown by a preponderance of the evidence that the Plaintiff assumed the risk of his injuries and that the assumption of risk defense bars a recovery based upon the Plaintiff's negligence claim. And so, the Court:

(1) **GRANTS** Costco's motion for judgment on partial findings (ECF No. 125);

(2) **CONCLUDES** that the preponderance of the evidence establishes that: (a) Costco did not breach a duty of ordinary care, by failing to ensure that its employee lifted the Grill box at the same time as the Plaintiff and (b) the Plaintiff assumed the risk of being injured while lifting the Grill box during the Grill Lifting Incident;

(3) **ENTERS JUDGMENT** on the partial findings in favor of Costco for these reasons, pursuant to Fed. R. Civ. P. 52(c); and

(4) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[3] Because the Court concludes that the assumption of the risk defense bars the Plaintiff's negligence claim, the Court does not address Costco's contributory negligence defense.